## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEPHEN BUSHANSKY, On Behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § § | Case No. _5:18-cv-642_ |
| v. | § § | JURY TRIAL DEMANDED |
| ANDEAVOR, GREGORY J. GOFF, RODNEY F. CHASE, PAUL L. FOSTER, EDWARD G. GALANTE, DAVID LILLEY, MARY PAT MCCARTHY, J.W. NOKES, WILLIAM H. SCHUMANN, III, JEFF A. STEVENS, SUSAN TOMASKY, MICHAEL E. WILEY and PATRICK Y. YANG, | § § § § § § § § § § § | CLASS ACTION |
| Defendants. | § | |

## CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of the public stockholders of Andeavor ("Andeavor" or the "Company") against Andeavor and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder and to enjoin the vote on a proposed transaction, pursuant to which Andeavor will be acquired by Marathon Petroleum Corp. ("MPC") through its wholly owned subsidiaries Mahi Inc. ("Merger

Sub 1") and Mahi LLC ("Merger Sub 2") (the "Proposed Transaction").

2.      On April 30, 2018, Andeavor and MPC issued a joint press release announcing that they had entered into an agreement and plan of merger dated April 29, 2018 (the "Merger Agreement").  Under the terms of the Merger Agreement, Andeavor stockholders will receive either 1.87 shares of MPC common stock (the "stock consideration") or $152.27 in cash (the "cash consideration" and together with the "stock consideration," the "Merger Consideration") for each share of Andeavor common stock they own.  The Merger Consideration is subject to allocation and proration such that the total number of shares of Andeavor common stock converted into cash will be equal to 22,885,539 shares.  If the Proposed Transaction closes, MPC and Andeavor will own approximately 66 percent and 34 percent of the combined company, respectively.  The Proposed Transaction is valued at approximately $23.3 billion.

3.      On May 29, 2018, MPC filed a Form S-4 Registration Statement containing a proxy statement of Andeavor (the "Registration Statement") with the SEC in connection with the Proposed Transaction.   The Registration Statement, which recommends that Andeavor stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections, utilized by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman") in its financial analyses; and (ii) the valuation analyses prepared by Goldman in connection with the rendering of its fairness opinion.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Andeavor stockholders need such information in order to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction.

4.      In short, unless remedied, Andeavor's public stockholders will be forced to make

a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.       This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.       Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Andeavor is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.       Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Andeavor common stock.

9.       Andeavor is a Delaware corporation and maintains its principal executive offices at 19100 Ridgewood Parkway, San Antonio, Texas 78259. The Company is a highly integrated

crude oil marketing, logistics and refining company.  Andeavor's common stock is traded on the New York Stock Exchange under the ticker symbol "ANDV."

10.     Defendant Gregory J. Goff ("Goff") has served as President and Chief Executive Officer ("CEO") of the Company since May 2010 and as Chairman of the Board since December 2014.  Defendant Goff has served as Chairman of the board and CEO of Tesoro Logistics GP, LLC, the general partner of Andeavor Logistics LP ("Andeavor Logistics"), since December 2010.

11.     Defendant Rodney F. Chase ("Chase") has served as a director of the Company since 2006.

12.     Defendant Paul L. Foster ("Foster") has served as a director of the Company since 2017.

13.     Defendant David Lilley ("Lilley") has served as a director of the Company since 2011.

14.     Defendant Mary Pat McCarthy ("McCarthy") has served as a director of the Company since 2012.

15.     Defendant J.W. Nokes ("Nokes") has served as a director of the Company since 2007.

16.     Defendant William H. Schumann III ("Schumann") has served as a director of the Company since 2016.

17.     Defendant Jeff A. Stevens ("Stevens") has served as a director of the Company since 2017.

18.     Defendant Susan Tomasky ("Tomasky") has served as lead director since December 2014 and a director of the Company since 2011.

19.     Defendant Michael E. Wiley ("Wiley") has served as a director of the Company

4

since 2005.

20.    Defendant Patrick Y. Yang ("Yang") has served as a director of the Company since 2010.

21.    The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.    MPC is a Delaware corporation and maintains its principal executive offices at 539 South Main Street, Findlay, Ohio 45840.  MPC is one of the largest independent petroleum product refining, marketing, retail and transportation businesses in the United States.  MPC's common stock is traded on the New York Stock Exchange under the ticker symbol "MPC."

23.    Andeavor Logistics, formerly known as Tesoro Logistics LP, is a master limited partnership that owns and operates crude oil and refined products logistics assets in the U.S. Andeavor owns 100% of the outstanding equity interest of Andeavor Logistics' general partner, Tesoro Logistics GP, LLC.  As of March 31, 2018, Andeavor owned approximately 59% of the outstanding common units of Andeavor Logistics.

24.    Merger Sub 1 is a Delaware limited liability company and a direct, wholly owned subsidiary of MPC.

25.    Merger Sub 2 is a Delaware limited liability company and a direct, wholly owned subsidiary of MPC.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Andeavor common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families,

legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

27.    This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.  The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of April 26, 2018, there were approximately 151,122,485 shares of Andeavor common stock issued and outstanding.  All members of the Class may be identified from records maintained by Andeavor or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28.    Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)    Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)    Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

29.    Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

30.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the

management of this action that would preclude its maintenance as a class action.

31.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

32.    Andeavor, formerly Tesoro Corporation, was founded in 1968 as a company primarily engaged in petroleum exploration and production.  Effective August 1, 2017, Tesoro Corporation changed its name to Andeavor following the completion of its $6.4 billion acquisition of Texas-based oil refiner Western Refining Inc.  Today, the Company's business is organized into three operating segments: marketing, logistics and refining.  These segments operate to procure crude oil at its source or from third parties, transport the crude oil to the Company's refineries, then produce, market and distribute the refined products.  Andeavor's retail marketing system includes over 3,250 stations under the brands: Arco, Shell, Mobil and SuperAmerica.

33.    Over the past year, Andeavor has taken steps to expand its position in the Permian Basin, the largest petroleum-producing basin in the United States.  For example, on January 3, 2018, the Company announced its agreement to acquire Rangeland Equity II, LLC ("Rangeland").  Rangeland operates assets in the Delaware and Midland Basins.  According to the press release announcing the acquisition,

> Andeavor plans to integrate the acquired 110-mile crude oil pipeline (with ultimate throughput capacity of 145,000 barrels per day) and crude oil storage terminals with its nearby Conan Crude Oil Gathering System, currently under construction. Once fully integrated, the combination of the two systems will provide producers access to multiple markets by connecting to existing takeaway pipeline systems. The combined system also supports Andeavor's development of additional gathering systems in the area, as well as enhancing commercial opportunities by providing direct access to the Midland market hub.

34.     In addition, on April 24, 2018, the Company announced participation in two new joint ventures that support the transportation of crude oil from the Permian Basin to Corpus Christi, Texas.  According to the press release announcing the participation, Gray Oak Pipeline, LLC ("Gray Oak"), a joint venture owned 25% by Andeavor, could potentially transport up to 700,000 barrels of crude oil per day from the Permian Basin to downstream markets.  The Gray Oak pipeline will connect to a new joint venture marine terminal called the South Texas Gateway Terminal, owned 25% by Andeavor.  The terminal is expected to have an initial storage capacity of 3.4 million barrels.  The Gray Oak pipeline and the South Texas Gateway Terminal are both expected to commence operations by the end of 2019.

35.     Underscoring its positioning for future growth, on May 7, 2018, Andeavor issued a press release announcing its first quarter 2018 financial results.  For the quarter, the Company reported earnings of $164 million, or $1.07 per diluted share, compared to $50 million, or $0.42 per diluted share in the first quarter of 2017.  Consolidated net earnings were $237 million, compared to $87 million in the first quarter of 2017, and EBITDA was $680 million, compared to $432 million in the first quarter of 2017.  Defendant Goff commented on the Company's strong financial results, stating:

> We continue to make excellent progress executing the growth plans we communicated at our December Investor and Analyst Day. We have raised our 2020 Andeavor Logistics' growth target to $965 million of net earnings and EBITDA by $150 million to over $1.6 billion as a result of our recently announced acquisitions and strategic projects in the Permian Basin. . . . Our integrated business model allowed us to deliver strong results despite lower than normal crack spreads on the West Coast early in the first quarter. Looking ahead, crude oil differentials and refining crack spreads have improved significantly, and we see continued growth in demand and the refining margin environment across our entire business, which should benefit the second quarter and full year.

**The Proposed Transaction**

36.     In March 2017, defendant Goff and Gary R. Heminger ("Heminger"), MPC's Chairman and CEO, discussed the possibility of exploring a strategic transaction.

37.     Andeavor and MPC entered into a mutual confidentiality agreement in August 2017 and, over the next several months, the parties conducted due diligence, including a joint synergies assessment.  On October 27, 2017, the CEOs mutually agreed to suspend discussions as the parties were unlikely to reach an agreement on terms given the then-current relative market valuations of the two companies.

38.     The parties resumed discussions in February 2018 following a shift in the relative MPC and Andeavor market valuations.

39.     On April 6, 2018, defendant Goff and Heminger discussed the key terms of a transaction, including an exchange ratio of 1.87x MPC for each issued and outstanding Andeavor share.  They met again on April 10 and 11, 2018 and agreed, subject to the approval of their respective boards of directors, to the exchange ratio of 1.87x and a consideration mix of either 85% MPC stock and 15% cash or 90% MPC stock and 10% cash.  Thereafter, the parties proceeded to negotiate the final terms of the Proposed Transaction.

40.     On April 29, 2018, Goldman rendered its fairness opinion and the Board approved the Merger Agreement.  The parties executed the Merger Agreement later that day.

41.     Following entry into the Merger Agreement, on April 30, 2018, the Company and MPC issued a joint press release announcing the Proposed Transaction, which stated, in relevant part:

> **FINDLAY, Ohio, and SAN ANTONIO, Texas - April 30, 2018** - Marathon Petroleum Corp. (NYSE: MPC) and Andeavor (NYSE: ANDV) today announced that they have entered into a definitive merger agreement under which MPC will acquire all of ANDV's outstanding shares, representing a total equity value of $23.3

billion and total enterprise value of $35.6 billion, based on MPC's April 27, 2018, closing price of $81.43. ANDV shareholders will have the option to choose 1.87 shares of MPC stock, or $152.27 in cash subject to a proration mechanism that will result in 15 percent of ANDV's fully diluted shares receiving cash consideration. This represents a premium of 24.4 percent to ANDV's closing price on April 27, 2018. MPC and ANDV shareholders will own approximately 66 percent and 34 percent of the combined company, respectively. The transaction was unanimously approved by the board of directors of both companies and is expected to close in the second half of 2018, subject to regulatory and other customary closing conditions, including approvals from both MPC and ANDV shareholders. The headquarters will be located in Findlay, Ohio, and the combined business will maintain an office in San Antonio, Texas.

* * *

At closing, Greg Goff, ANDV chairman and chief executive officer, will join MPC as executive vice chairman. As executive vice chairman and an executive of MPC following closing, Goff will provide leadership and be integrally involved in the strategy for the combined company. . . .

* * *

**Transaction Terms**
Under the terms of the agreement, ANDV shareholders will have the option to elect 1.87 shares of MPC stock or $152.27 in cash per share subject to a proration mechanism that will result in 15 percent of ANDV's fully diluted shares receiving cash consideration. The stock portion of the consideration received by Andeavor's shareholders is expected to be tax-free.

### Insiders' Interests in the Proposed Transaction

42.    Andeavor and MPC insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Andeavor's public stockholders.

43.    Notably, according to the Registration Statement, defendant Goff has secured a position for himself as Executive Vice Chairman of the combined company and four members of the Board will continue as directors of MPC following completion of the Proposed Transaction.

44.    Further, Company insiders stand to reap substantial financial benefits for securing

the deal with MPC. If they are terminated in connection with the Proposed Transaction, Andeavor's named executive officers stand to receive substantial cash severance benefits in the form of golden parachute compensation, as set forth in the following table:

**Golden Parachute Compensation**

| Name | Cash ($) (1) | Equity ($) (2) | Pension/ NQDC ($) (3) | Benefits ($) (4) | Total ($) |
|------|------|------|------|------|------|
| Gregory J. Goff | 15,040,002 | 52,284,745 | 0 | 40,419 | 67,365,166 |
| Steven M. Sterin | 5,334,000 | 10,804,008 | 979,952 | 40,419 | 17,158,379 |
| Keith M. Casey | 4,813,300 | 11,285,470 | 1,101,423 | 40,419 | 17,240,612 |
| Kim K.W. Rucker | 4,794,000 | 8,218,273 | 229,000 | 40,419 | 13,281,692 |
| Cynthia J. Warner | 4,302,000 | 7,694,143 | 730,792 | 40,419 | 12,767,354 |

### The Registration Statement Contains Material Misstatements and Omissions

45.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Andeavor's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

46.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Andeavor management's financial projections, relied upon by Andeavor's financial advisor, Goldman, in its financial analyses; and (ii) the valuation analyses prepared by Goldman in connection with the rendering of its fairness opinion. Accordingly, Andeavor stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Andeavor's Financial Projections*

47.     The Registration Statement omits material information regarding Andeavor management's projections that were provided to and relied upon by Goldman for its analyses.

48.     For example, the Registration Statement states:

In connection with rendering the [fairness] opinion . . . and performing its related financial analyses, Goldman Sachs reviewed, among other things:

* * *

. . . certain financial analyses and forecasts for MPC pro forma for the merger prepared by Andeavor management, which are referred to as the MPC pro forma forecasts . . . as approved for Goldman Sachs' use by Andeavor, including certain operating synergies projected by Andeavor management to result from the merger, which are referred to as the synergies, as approved for Goldman Sachs' use by Andeavor.

Registration Statement at 122. Yet, the Registration Statement fails to set forth the "forecasts for MPC pro forma for the merger prepared by Andeavor management" and the "certain operating synergies projected by Andeavor management to result from the merger" for Andeavor and the pro forma company, respectively, that Andeavor provided to Goldman in connection with its analyses.

49.     The omission of this material information renders the Registration Statement false and misleading, including, inter alia, the following sections of the Registration Statement: "Unaudited Forecasted Financial Information of Andeavor" and "Opinion of Goldman Sachs, Andeavor's Financial Advisor."

***Material Omissions Concerning Goldman's Financial Analyses***

50.     The Registration Statement describes Goldman's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Andeavor's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Andeavor's stockholders.

51.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis ("DCF")* *– Andeavor Standalone*, the Registration Statement fails to disclose: (i) quantification of the actual inputs and assumptions underlying the discount rate range of 8.5% to 9.5% selected and used by Goldman in its analysis; (ii) the terminal year estimate of the free cash flow to be generated by Andeavor on a standalone basis utilized to calculate the range of illustrative terminal values for Andeavor; (iii) Andeavor's net debt (excluding net debt of Andeavor Logistics) as of December 31, 2017; and (iv) the terminal exit multiples implied from Goldman's analysis.

52.     With respect to Goldman's *Illustrative DCF – Implied Valuation Uplift*, the Registration Statement fails to disclose: (i) quantification of the actual inputs and assumptions underlying the discount rate range of 8.5% to 9.5% selected and used by Goldman in its analysis; (ii) the terminal year estimate of the free cash flow to be generated by MPC on a standalone basis utilized to calculate the range of illustrative terminal values for MPC on a standalone basis; (iii) the free cash flow resulting from the estimated synergies for the years 2018 through 2022 (including cost and capital to achieve such synergies) utilized by Goldman in the analysis; (iv) the terminal year estimate of the free cash flow to be generated by the synergies utilized to calculate the range of illustrative terminal values for the synergies; (v) the pro forma net debt (excluding net debt of Andeavor Logistics and MPLX LP ("MPLX")) utilized by Goldman in the analysis; and (vi) the terminal exit multiples implied from Goldman's analysis.

53.     With respect to Goldman's *Illustrative DCF – Andeavor Standalone* and *Illustrative DCF – Implied Valuation Uplift*, the Registration Statement discloses that Goldman performed sensitivity analyses to analyze the effect of changes in the growth rate for Andeavor's refining gross margin.  According to the Registration Statement, Goldman utilized:

> [(i)] calculations of unlevered free cash flow for Andeavor on a standalone basis for the years 2018 through 2022 derived from the Andeavor forecasts by assuming

the growth rates for Andeavor's refining gross margins from 2019 to 2022 are consistent with the estimated growth rates for MPC's refining gross margins over the same period reflected in the MPC standalone forecasts . . . [the ("MPC-based Andeavor FCF estimates")], and [(ii)] a range of illustrative terminal values for Andeavor on a standalone basis, which were calculated by applying perpetuity growth rates ranging from 0% to 1%, to a terminal year estimate of the free cash flow to be generated by Andeavor on a standalone basis as reflected in the MPC-based Andeavor FCF estimates . . . [the ("MPC-based Andeavor terminal values)], in each case, as directed by Andeavor management.

Registration Statement at 127. Yet, the Registration Statement fails to disclose the MPC-based Andeavor FCF estimates and the MPC-based Andeavor terminal values used by Goldman, at the direction of Andeavor management, in these sensitivity analyses.

54. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis – Andeavor Standalone*, the Registration Statement fails to disclose: (i) the amount of Andeavor's net debt as of December 31, 2018 and December 31, 2019 as estimated by Andeavor management; (ii) quantification of the illustrative equity values of Andeavor's non-controlling interest in Andeavor Logistics and the underlying inputs, including (a) the estimated EBITDA for Andeavor Logistics for 2019 and 2020, (b) the amount of net debt and preferred equity for Andeavor Logistics as of December 31, 2018 and December 31, 2019, and (c) the percentage of public ownership in Andeavor Logistics, in each case, as provided by Andeavor management; and (iii) the inputs and assumptions underlying the discount rate of 10.0% that Goldman applied in the analysis.

55. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis – Implied Valuation Uplift*, the Registration Statement fails to disclose: (i) the estimated EBITDA for fiscal years 2019 and 2020, as reflected in the MPC pro forma forecasts, that Goldman utilized to calculate the implied values per share of MPC common stock pro forma for the merger as of December 31, 2018 and December 31, 2019; (ii) the illustrative capitalized value of the

synergies utilized by Goldman in the analysis; (iii) the amount of MPC's net debt pro forma for the merger as of December 31, 2018 and December 31, 2019, as estimated by Andeavor management; (iv) quantification of the estimated equity value of Andeavor's non-controlling interest in Andeavor Logistics and the estimated equity value of MPC's non-controlling interest in MPLX and the underlying inputs, including (a) the estimated EBITDA for Andeavor Logistics and the estimated EBITDA for MPLX for 2019 and 2020 as set forth in the MPC pro forma forecasts, (b) the amount of net debt and preferred equity for Andeavor Logistics and MPLX as of December 31, 2018 and December 31, 2019, respectively, and (c) the percentage of public ownership in Andeavor Logistics and MPLX, respectively, in each case, as provided by Andeavor management; and (v) the inputs and assumptions underlying the discount rate of 9.7% that Goldman applied in the analysis.

56.    With respect to *Goldman's Illustrative Present Value of Future Share Price Analysis – Andeavor Standalone* and *Illustrative Present Value of Future Share Price Analysis – Implied Valuation Uplift*, the Registration Statement discloses that Goldman performed sensitivity analyses to give effect of a change in the growth rate for Andeavor's refining gross margin in 2019 utilizing calculations of EBITDA for fiscal year 2020 derived from the Andeavor forecasts and MPC pro forma forecasts, respectively, "by assuming the growth rate for Andeavor's refining gross margin from 2019 to 2020 is consistent with the estimated growth rate for MPC's refining gross margin over the same period reflected in the MPC standalone forecasts, as directed by Andeavor management."  Registration Statement at 129, 130.  Yet, the Registration Statement fails to disclose the sensitized fiscal year 2020 EBITDA values for Andeavor as a standalone and the pro forma company, used by Goldman, at the direction of Andeavor management, in these sensitivity analyses.

57.     The omission of this information renders the Registration Statement false and misleading, including, inter alia, the following section of the Registration Statement: "Opinion of Goldman Sachs, Andeavor's Financial Advisor."

58.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Class Claims Against All Defendants for Violations of
### Section 14(a) of the Exchange Act and SEC Rule 14a-9

59.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

61.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the financial analyses performed by the Company's financial advisor and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Registration Statement with

these materially false and misleading statements.

62.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.

63.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

64.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

<u>COUNT II</u>

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

65.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66.     The Individual Defendants acted as controlling persons of Andeavor within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Andeavor and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

67.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

69.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

70.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

71.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated  thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Andeavor's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Andeavor, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying

Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Andeavor stockholders;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

<u>**JURY DEMAND**</u>

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: June 26, 2018                    Respectfully submitted,

/s/ William B. Federman
William B. Federman, TBA #00794935
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
-and-
2926 Maple Ave., Suite 200
Dallas, Texas 75201
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

*Attorney for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
*Pro Hac Vice To Be Filed*
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com